# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| JOSEPH VARGO<br>Doing Business As "MONOLITH GRAPHICS"<br>and Professionally Known As "NOX ARCANA"<br>PO Box 360801<br>Strongsville, Ohio 44136<br><br>*Plaintiff,*<br><br>vs.<br><br>ELMO KENNEDY O'CONNOR<br>Professionally Known As "BONES"<br>529 W Orange Grove Ave.<br>Sierra Madre, CA 91024<br><br>DANIEL PORTORREAL DURAN<br>Professionally Known As "LYSON"<br>c/o EMPIRE<br>235 Pine Street, 24th Floor<br>San Francisco, CA 94104<br><br>ELLIOTT FELIX O'CONNOR<br>529 W Orange Grove Ave.<br>Sierra Madre, CA 91024<br><br>TEAMSESH, LLC.<br>Elliott O'Connor, Statutory Agent<br>529 W Orange Grove Ave.<br>Sierra Madre, CA 91024<br>For Service:<br>80 W Sierra Madre Blvd #73<br>Sierra Madre, CA 91024 | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. ___________________<br><br>Judge: _____________________<br><br>JURY TRIAL DEMAND |

EMPIRE DISTRIBUTION, INC. )
Ghazi Shami, Chief Executive Officer, Chief )
Financial Officer, Secretary, Director )
235 Pine Street )
24th Floor )
San Francisco, CA 94104 )
For Service: )
1505 Corporation )
c/o Corporation Service Company )
Which Will Do Business in California as )
CSC-Lawyers Incorporating Service )
2710 Gateway Oaks Drive, Suite 150N )
Sacramento, CA 95833 )
)
EMPIRE PUBLISHING, INC. )
d/b/a EMPIRE STRIKES FIRST )
Ghazi Shami, Chief Executive Officer, Chief )
Financial Officer, Secretary, Director )
235 Pine Street, 24th Floor )
San Francisco, CA 94104 )
For Service: )
1505 Corporation )
c/o Corporation Service Company )
Which Will Do Business in California as )
CSC-Lawyers Incorporating Service )
2710 Gateway Oaks Drive, Suite 150N )
Sacramento, CA 95833 )
)
and )
)
Other Does, )
)
*Defendants*. )

# COMPLAINT
## WITH JURY DEMAND HEREIN

Now Comes Plaintiff, Joseph Vargo (DBA Monolith Graphics) by and through undersigned co-counsel, David T. Rice and Jeffrey R. Chilcoat Pursuant to Fed. R. Civ.P. 3, who bring this action against Defendants, and allege as follows (on knowledge as to Plaintiffs, otherwise on information and belief):

## INTRODUCTION

1. This case concerns the unauthorized taking of an original musical work and sound recording and its incorporation into a commercially released, distributed, monetized, and publicly performed song pursuant to 17 U.S.C. 101 et seq.

2. Plaintiff Joseph Vargo, professionally known as (p/k/a) “Nox Arcana”, doing business as (“d/b/a”) Plaintiff Monolith Graphics, created “Dreamscape,” an original musical work and sound recording released as track number 8 on the album “Legion of Shadows” by Nox Arcana through Monolith Graphics and was duly registered on October 8, 2013, with the United States Copyright Office under Registration No. SR 734-045. A copy of the registration certificate is attached as Exhibit 1.

3. In 2020, Defendants commercially produced, recorded, released, distributed and performed, a work titled “RedAlert.”

4. Beginning in or about 2020, Defendant, Elmo Kennedy O'Connor, p/k/a BONES (hereinafter "BONES"), publicly performed "RedAlert" on multiple occasions.

5. "RedAlert" unambiguously incorporates protectable material from "Dreamscape."

6. No Defendant obtained Plaintiff's permission to license or sample the sound recording, reproduce the musical composition, or prepare and exploit a derivative work.

7. Defendants nevertheless commercially released "RedAlert" through digital music services, continued to perform "RedAlert" in live performances, collected substantial revenue associated with "RedAlert" and in fact improperly asserted their own publishing and sound recording rights in the Plaintiff's music and composition.

8. Plaintiff gave Defendants detailed notice of the infringement in May 2025.

9. After receiving said notice, Defendants acknowledged the dispute, claimed to have investigated the claimed distribution rights, purposely exchanged incomplete information, including revenue reports, and represented that takedowns had begun.

10. Nonetheless, the recording remained available for a substantial period after notice, and Defendants continued to exploit and perform it.

11. In one subsequent communication with Plaintiff, Defendant commented that "this [infringement] is just part of hip-hop culture."

12. This action seeks relief under the Copyright Act, including statutory damages, all attributable profits, injunctive relief, an accounting, costs, attorney's fees where available and all other remedies this Court deems appropriate.

## PARTIES

13. Plaintiff Joseph Vargo is a musician, composer, and sound recording artist residing in Ohio. Plaintiff conducts copyright-related business under the name Monolith Graphics.

14. Plaintiff Vargo is the sole author and copyright owner of the musical composition and sound recording entitled "Dreamscape," which was properly registered as track number 8 on the album entitled "Legion of Shadows" on October 8, 2013, with the United States Copyright Office under Registration No. SR 734-045.

15. Plaintiff Vargo records his music and promotes his releases under his performing artist name "Nox Arcana" for which he owns a United States Registered Trademark (Serial No. 98-431,754 / Reg. No. 7,611,623.

16. Defendant BONES is a recording artist and touring performer who produced, recorded, released, distributed and performed this subject titled "RedAlert."

17. Defendant BONES has performed "RedAlert" live on a significant number of occasions and in multiple locations and venues around the world.

18. Defendant BONES performed and released "RedAlert" and participated in its promotion, distribution, public performance, and commercial exploitation.

19. Defendant Daniel Portorreal Duran, p/k/a LYSON (hereinafter "Duran"), is an individual who, upon information and belief, resides in California.

20. Upon information and belief, Duran participated in producing, arranging, recording, and mixing "RedAlert."

21. Public records identify Duran as a composer/author and producer associated with "RedAlert."

22. Defendant TeamSESH, LLC. ("TeamSESH") is a California limited-liability company with an address at 529 West Orange Grove Avenue, Sierra Madre, California 91024.

23. Upon information and belief, Defendant TeamSESH acted as a label, rights holder, licensor, or commercial participant in the release and exploitation of "RedAlert."

24. Defendant Empire Distribution, Inc. ("Empire Distribution") is a music distribution company located in San Francisco, CA that distributed, monetized, collected revenue for, and accounted for the infringing work across various digital platforms and live performance venues, despite having received notice of infringement by Plaintiff.

25. Defendant Empire Publishing, Inc. ("Empire Publishing" also d/b/a Empire Strikes First / Empire SF / Empire San Francisco) is a publishing administrator and publisher with its business located in San Francisco, California, and on information and belief administers and collects royalties for Defendant BONES work including "RedAlert."

26. Public records identify Empire Distribution, Inc. ("Empire Distribution"), Empire Publishing, Inc. ("Empire Publishing"), and Empire Recordings, Inc. ("Empire Recordings") as separately registered California corporations, with separate California entity numbers.

27. As of 2025, Statements of Information filed with the California Secretary of State list the same principal business address – 235 Pine Street, 24th Floor, San Francisco, California – for Empire Distribution, Empire Publishing, and Empire Recordings.

28. Statements of Information filed with the California Secretary of State in 2025 list Ghazi Shami as a senior officer for Empire Distribution, Empire Publishing, and Empire Recordings.

29. Statements of Information filed with the California Secretary of State in 2025 identify Empire Recordings' stated business as "Music recording services."

30. The shared address, listed officers, and listed service agent indicate common management, shared administration, or another business affiliation among these corporations.

31. The records presently available to Plaintiff associate Empire Distribution with the distribution and revenue-reporting activity concerning "RedAlert."

32. The records presently available to Plaintiff associate Empire Publishing with publishing-administration activity concerning "RedAlert." In particular, Letters of Direction signed by Elmo O'Connor (p/k/a BONES) and Daniel Duran (p/k/a Lyson) identify Empire Publishing, Inc. and publishing names associated with Empire in connection with publishing administration. A true and accurate copy of Defendant BONES' Letter of Direction is attached as Exhibit 2. A true and accurate copy of Defendant Duran's Letter of Direction is attached as Exhibit 3.

33. On information and belief, the agreements, corporate records, and entity-level accounting will show which legal entity improperly performed or authorized particular distribution, publishing, rights-management, or revenue-collection activities.

34. On information and belief, "Empire Strikes First" and "Empire SF" are one or more of the following: assumed or fictitious business names, trade names, imprints, divisions, publishing brands, or publishing operations used by Empire Publishing; business names or publishing operations used by Empire Distribution; affiliated entities or agents acting for one or both corporations; or separate legal entities.

35. Defendants Empire Distribution; Empire Publishing; d/b/a Empire Strikes First (collectively "the Empire Entities," or "Empire Defendants") together with Empire Recordings are business entities associated with BONES and the release and/or management of his recordings including "RedAlert".

36. Defendants TeamSESH and the Empire Entities are identified in connection with the copyright and phonorecord information for "RedAlert."

37. Defendant Elliot O'Connor holds himself out as "navigating industry opportunities for [Defendant] BONES, and supporting [Defendant] BONES' artistic direction, and running sound at [Defendant] BONES' concerts."

38. Defendant Elliott O'Connor received Plaintiff's May 2025 notice that "RedAlert" incorporated Plaintiff's copyrighted work, "Dreamscape," without authorization.

39. Defendant Elliott O'Connor participated in the ensuing notice-response communications by identifying himself as Defendant BONES' manager and by bringing an attorney identified as Randy Acker into the correspondence concerning Plaintiff's claim.

40. Notwithstanding that said May notice, on September 17, 2025, Defendant BONES performed "RedAlert" before a live audience at Riverbend Music Center in Cincinnati, Ohio.

41. This Cincinnati performance was one of immeasurable post notice live performances of "RedAlert". Plaintiff possesses and has preserved contemporaneous video footage depicting Defendant Elliott O'Connor on stage operating live-production equipment during, inter alia, that performance.

42. On information and belief, Defendant Elliott O'Connor ran sound and/or playback for the performance and knowingly, personally, and materially contributed to the post-notice exploitation of "RedAlert," including its unauthorized use of Plaintiff's copyrighted work "Dreamscape."

## JURISDICTION AND VENUE

43. Plaintiff incorporates the previous paragraphs of this Complaint as if fully written.

44. This action arises under the Federal Copyright Act of 1976, as amended, 17 U.S.C. §§ 101–810.

45. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

46. Plaintiff alleges the jurisdictional facts below based on personal knowledge, Defendants' communications and conduct, publicly available information, Plaintiff's review of the identified digital assets and rights-management records, and, where expressly stated, information and belief.

47. The facts concerning the geographic location of streams, downloads, purchases, digital transmissions, royalties, accounting, distribution, and rights-management activity concerning "RedAlert" are substantially within Defendants' and third-party digital-service providers' possession, custody, or control, and all of which are properly discoverable.

48. Defendants commercially released and exploited the musical work and sound recording titled "RedAlert" through nationwide digital-distribution, streaming, rights-management, and monetization channels.

49. “RedAlert” is identified, among other identifiers, by Sound Recording ISRC USUYG1340987, Music Video ISRC USUYG1345252, UPC 194690369681, YouTube Official Music Video Asset ID A544306216829974, Sound Recording Asset and YouTube Content ID A259780000726262, Youtube Composition Asset A103542417542108, BMI Work No. 64189627, ISWC T3350392944, HFA/MLC song code RC5WSK, Sound Exchange ID SX211B1H2T.

50. Empire Distribution represented to Plaintiff on or about June 11, 2025, that it had generated and collected income associated with “RedAlert.” Empire Distribution thereafter participated in communications concerning the removal, continued availability, monetization, and accounting of the accused work. Those communications confirm that Empire Distribution possessed or controlled information concerning the commercial exploitation of “RedAlert.”

51. After Plaintiff gave written notice in May 2025 that “RedAlert” incorporated Plaintiff’s copyrighted “Dreamscape” sound recording and musical composition without authorization, Defendants and their representatives addressed the continued distribution, removal, replacement, live performance, accounting, and monetization of “RedAlert.” Defendants continued to maintain, authorize, monetize, administer, or otherwise commercially exploit identified “RedAlert” assets after receiving that notice.

52. Empire Publishing, or an Empire-affiliated publishing entity, maintained, administered, asserted, or monetized composition-related claims concerning “RedAlert,” including through identified digital-rights and Content ID systems. Plaintiff’s correspondence and the status of the identified composition asset establish that Empire Publishing had an

ongoing role in the administration or assertion of rights in the "RedAlert" composition after Plaintiff's notice of infringement.

53. On information and belief, and based on the nationwide commercial distribution of "RedAlert"; Defendants' identified roles in its release, distribution, publishing, monetization, and rights administration; Empire Distribution's acknowledgment that it generated and collected income associated with the work; and the identified platform and Content ID assets, "RedAlert" was streamed, downloaded, purchased, digitally transmitted, publicly performed, or otherwise commercially exploited by users located in the Northern District of Ohio.

54. On information and belief, Defendants' distribution, publishing, accounting, royalty, and rights-management systems generated, received, maintained, or made available territorial data concerning the exploitation of "RedAlert," including information sufficient to identify streams, downloads, sales, digital transmissions, performances, revenues, royalties, and other exploitation occurring in Ohio and in the Northern District of Ohio.

55. The precise locations, amounts, dates, and revenue attributable to that exploitation are presently within Defendants' and third-party service providers' possession, custody, or control.

56. Defendant BONES purposefully participated in the release, promotion, performance, and commercial exploitation of "RedAlert."

57. On information and belief, BONES authorized, benefited from, and received revenue derived from the nationwide exploitation of "RedAlert," including its exploitation in the Northern District of Ohio.

58. Defendant Duran, purposefully participated in the creation, release, and commercial exploitation of “RedAlert.”

59. On information and belief, Duran authorized, benefited from, and received producer, artist, composition, royalty, or other revenue derived from the nationwide exploitation of “RedAlert,” including its exploitation in the Northern District of Ohio.

60. Defendant TeamSESH, LLC purposefully participated in, authorized, or maintained the release and commercial exploitation of “RedAlert” as the label or commercial-rights participant for the work.

61. On information and belief, TeamSESH authorized or benefited from digital distribution and other commercial exploitation of “RedAlert” in the Northern District of Ohio and received revenue attributable to that exploitation.

62. Defendant Empire Distribution, Inc. purposefully availed itself of the privilege of conducting commercial activity in Ohio and the Northern District by accepting, processing, delivering, maintaining, monetizing, and administering the distribution of “RedAlert” through commercial digital platforms and distribution channels serving consumers in this District.

63. On information and belief, Empire Distribution received, possessed, controlled, or could access territorial data and revenue information reflecting exploitation of “RedAlert” in the Northern District of Ohio.

64. Defendant Empire Publishing, Inc. purposefully availed itself of the privilege of conducting commercial activity in Ohio and the Northern District by administering, asserting, maintaining, monetizing, or collecting revenue from composition-related

interests in "RedAlert" through publishing, performance-rights, mechanical-royalty, Content ID, or other rights-management systems.

65. On information and belief, those systems processed, recorded, or made available data concerning the exploitation of "RedAlert" in the Northern District of Ohio.

66. Plaintiff's claims arise out of and relate to Defendants' Northern-District-directed conduct because the same "RedAlert" sound recording and musical composition that Defendants allegedly distributed, administered, performed, monetized, and maintained for commercial exploitation in this District incorporate Plaintiff's copyrighted Dreamscape Works.

67. Jurisdiction is proper in the Northern District of Ohio because Ohio has a substantial interest in adjudicating injuries resulting from the exploitation of copyrighted works owned by an Ohio resident and business, and the relevant territorial exploitation, accounting, revenue, licensing, publishing, and rights-management evidence is substantially within Defendants' control.

68. Jurisdiction is proper in the Northern District of Ohio because this Court has personal jurisdiction over all Defendants because all Defendants participated in the commercial exploitation of the infringing work in the state of Ohio.

69. Venue is proper in this District because pursuant to 28 U.S.C. § 1400(a), an action arising under the federal copyright laws may be instituted in the district in which the defendant or the defendant's agent resides or may be found.

70. Venue is further proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District, including the alleged commercial exploitation, digital distribution, digital transmission,

monetization, and rights administration of "RedAlert" in the Northern District of Ohio. To the extent applicable, each entity Defendant resides in this District for venue purposes because it is subject to personal jurisdiction in this District with respect to this action. 28 U.S.C. § 1391(c)(2), (d).

## FACTS COMMON TO ALL CLAIMS

71. Plaintiff incorporates the previous paragraphs of this Complaint as if fully written.

72. It is uncontroverted that Plaintiff Vargo wrote the musical composition titled "Dreamscape" and recorded the original fixed work titled "Dreamscape" (hereinafter the "Dreamscape Works," or "Original Work").

73. It is uncontroverted that Plaintiff Vargo properly registered the musical composition titled Dreamscape and the recorded Original Work registered on October 8, 2013, with the United States Copyright Office ("U.S. Copyright Office") under Registration No. SR 734-045. The Dreamscape Works were commercially released digitally on October 10, 2013, and on October 31, 2013, on compact disc media on the album Legion of Shadows under Plaintiff, Monolith Graphics ("Monolith").

74. Dreamscape is properly registered with Plaintiff's Performance Rights Organization ("PRO") Broadcast Music, Inc. ("BMI") as work #16376320 showing Joseph Vargo (IPI # 00452114494) as 100% writer.

75. Dreamscape is registered by Plaintiff with the Mechanical Licensing Collective ("MLC") as work #D9326K, properly indicating Plaintiff, Joseph R Vargo, (IPI #00452114396) as 100% composer and indicates Plaintiff Monolith Graphics (IPI #00454515263) as 100% publisher.

76. Defendants released and exploited a musical composition and sound recording titled "RedAlert," credited to Defendant "BONES" with production credited to Defendant Duran initially released on or about November 4, 2020, under TeamSESH and Empire.

77. It is unambiguous that Defendants brazenly and patently used the original sound recording of the Dreamscape Works as the underlying music bed to Defendants release and public performance of "RedAlert."

78. It is unambiguous, that the entire music bed of "RedAlert" is comprised of unauthorized use of Plaintiff's Dreamscape Works; Defendants added rap lyrics and a pre-programmed, *de minimis*, non-copyrightable drum beat to the Dreamscape Works without license or attribution.

79. To be clear, all Defendants remarkably and beyond comprehension to Federal Copyright laws or any sense of respect for Plaintiff's Original Work (or the works of other artists'), "RedAlert" incorporated the actual original recording of Plaintiff's Original Work as an element in Defendants' recording and public performance of "RedAlert."

80. "RedAlert" has been widely exploited through streaming and at the time of the filing of this instant matter, exploitation includes over 23 million Spotify streams, 1.49 million SoundCloud plays, 3.9 million monetized views of the Official "RedAlert" Music Video, and monetized claims on 6.8 thousand video uploads of user-generated content with over 10 million views, culminating in nearly 37 million monetized views overall.

81. There were approximately 1,000 track downloads, according to a summary report from Empire.

82. Live performances at over 100 arenas and amphitheaters boasting up to 80,000 attendees per day.

83. The use of the "Dreamscape" sound recording and musical composition in "RedAlert" was not authorized by Plaintiff.

84. Prior to filing this instant Complaint, Plaintiff attempted to resolve its dispute. On May 20, 2025, Plaintiff Monolith issued a DMCA notice to Defendant Empire via its online contact form that "RedAlert" used Plaintiff's composition and sound recording "Dreamscape" without authorization and requested that Empire place a hold on payouts and connect Plaintiff with Defendant BONES' management.

85. On May 22, 2025, Plaintiff Monolith issued a second DMCA notice by email to Defendant Empire's purported legal department identifying the infringing work, the copyrighted work sampled, the applicable copyright registration, and the absence of any license or permission.

86. Later in the day on May 22, 2025, an unsigned response was emailed to Plaintiff from *legal@empi.re* stating that "the licensor of the content represented they had the full right and power to grant Empire exclusive distribution rights in the content," and further stated that it was "currently investigating this matter," thereby representing to Plaintiff that Defendant Empire had a valid rights claim and was handling the dispute through an internal review.

87. Also on May 22, 2025, Defendant Elliott O'Connor, identifying himself as Defendant "BONES' manager and not his legal representative," stated that he was "attaching our legal team for visibility so they can take a look," and attached one Randy Acker, an apparent

lawyer of Defendant BONES, coordinating their response through management and legal channels.

88. On June 6, 2025, Plaintiff sent Matthew Meneses, an apparent agent of Defendant Empire, a detailed records request seeking a complete accounting of all revenue from sales, streams, performance royalties, mechanical royalties, music-reporting income, SoundExchange income, concert revenue, merchandising revenue, and any other income attributable to "RedAlert," together with a copy of Empire's publishing and distribution agreement.

89. During the course of its investigation, Plaintiff learned that Defendant TeamSESH partnered with The Merch Truck, LLC, a company again run by Danny O'Connor, to sell merchandise tied to Defendants' exploitation of "RedAlert," including at least one specific "RedAlert" poster.

90. Defendants omitted disclosure to Plaintiff of the merchandising exploitation of "RedAlert," never identified merchandising proceeds in their accounting, and never explained why Plaintiff's work was being used to generate merchandise sales, despite repeated demands for a complete accounting of all exploitation.

91. Defendants repeatedly and consistently demonstrated willful bad-faith by continuing to misrepresent the scope of exploitation, removal from DSPs, revenue, and settlement value, but at the same time omitting material facts concerning continued streaming-related income, live performance exploitation, and merchandising exploitation, rendering their partial disclosures false and misleading.

92. Despite repeated notices, all Defendants failed to fully discontinue exploitation or correct crediting and registrations in a timely manner; at least some distribution takedowns

occurred on or about July 14, 2025, but other monetized assets (including a YouTube asset and user-generated content claims) and live performances continued.

93. Despite notice, all Defendants continued to exploit "RedAlert" and to maintain and enforce authorship/publisher claims that diverted royalties, demonstrating willful infringement and continuing harm.

94. On or about May 6, 2022, Defendant BONES executed a Letter of Direction addressed to PROs, including but not limited to: American Society of Composers Authors and Publishers ("ASCAP"), Society of European Stage Authors and Composers ('SESAC"), BMI, The MLC, The Harry Fox Agency, and "all concerned PROs and publishing companies worldwide," directing recipients to reflect an administration agreement naming Empire Publishing Inc. d/b/a Empire Strikes First (BMI), Empire SF (ASCAP), and Empire San Francisco (SESAC) as publishing administrator for BONES and to treat the administration as effective as indicated therein, and to send royalty checks, statements, and correspondence to Empire at 235 Pine St., Suite 24, San Francisco, CA 94104.

95. On or about April 15, 2024, Defendant Duran executed a Letter of Direction addressed to BMI, ASCAP, SESAC, The MLC, The Harry Fox Agency, and "all concerned PROs and publishing companies worldwide," directing recipients to reflect an administration agreement naming Empire Publishing Inc. d/b/a Empire Strikes First (BMI), Empire SF (ASCAP), and Empire San Francisco (SESAC) as publishing administrator for Defendant Duran, and to treat the administration as effective as indicated therein, and to send royalty checks, statements, and correspondence to Empire at 235 Pine St., Suite 24, San Francisco, CA 94104.

96. The Letters of Direction (Exhibits 2 and 3) demonstrate that the Empire Defendants and all of its Agents and assigns were designated by both principal credited creators associated with "RedAlert" to receive royalty checks, statements, and correspondence and to act as publishing administrator for its catalogs, including routing royalties and administering publisher claims that affect attribution and payments in industry systems.

97. Public catalogs, platforms, and rights-management records associated "RedAlert" with Defendants TeamSESH, Empire, or Empire Distribution.

98. Those records identified "RedAlert" as available through multiple digital music services, including Spotify, Apple Music, YouTube, Amazon Music, Tidal, Pandora, Deezer, SoundCloud, Audiomack, and other services.

99. The precise and complete list of digital music services, distribution, amounts, dates, and revenue attributable to that exploitation are presently within Defendants' and third-party service providers' possession, custody, or control.

100. The Mechanical Licensing Collective's public work records matched "RedAlert," identified the recording by ISRC USUYG1340987, and associated the recording with TeamSESH/Empire or Empire Distribution on multiple digital platforms.

101. The same records identified Defendant Duran, and Defendant BONES as persons associated with the composition registration for "RedAlert."

102. BMI records associated "RedAlert" with Work No. 64189627 and identified Empire Strikes First or an affiliated Empire publishing entity in the publisher or publisher-affiliation fields.

103. Defendants Empire Distribution and Empire Publishing were not merely unrelated third-party observers of “RedAlert.” Their names, entities, accounts, and rights-management identifiers appeared in connection with the release, distribution, publishing, collection, and administration of the work.

104. Upon information and belief, Defendant Empire Distribution, if not all of the Empire Defendants, accepted or processed “RedAlert” for delivery to digital music services, supplied or maintained release metadata, and administered the distribution relationship through which the recording was made available.

105. Upon information and belief, Defendant Empire Publishing, if not all of the Empire Defendants, or an affiliated publishing entity submitted, maintained, administered, or asserted composition-related registrations or claims associated with “RedAlert.”

106. The associated relevant rights-management records included, but are not limited to, among other assets:

a. YouTube sound-recording asset A544306216829974,
b. YouTube official music video asset A259780000726262,
c. Youtube Composition Asset A103542417542108

107. The precise and complete list of rights-management records, distribution, amounts, dates, and revenue attributable to that exploitation are presently within Defendants’ and third-party providers’ possessions, custody, or control.

108. Defendant Empire’s involvement included affirmative acts concerning the identified assets, including accepting or maintaining release information, administering metadata, asserting or maintaining rights-management claims, and controlling whether those assets remained active or were removed.

109. Defendant Empire's affirmative participation and misrepresentation in the distribution, publishing, rights-management, and monetization systems associated with the identified recording and composition assets was knowing and willful.

110. On May 20, 2025, Monolith reported to YouTube that information displayed in connection with "Dreamscape" had changed on videos on which YouTube displayed both "Dreamscape" and "RedAlert" as matched music. Comparative screenshots accompanying the report showed "Dreamscape" and Nox Arcana still identified but showed *FromBeyondTheGrave* album information and artwork where *Legion of Shadows* information and artwork had previously appeared with "Dreamscape."

111. Monolith also reported that the displayed link for its "Dreamscape" art track was not functioning as it had previously. The report identified, among others, videos at

a) https://www.youtube.com/watch?v=T_NfOQTq7jY and
b) https://www.youtube.com/watch?v=-gRErgekoRs.

112. On June 26, 2025, after Plaintiff had already notified Empire of its infringement, Plaintiff sent Empire Publishing a YouTube ownership-conflict notification concerning "RedAlert" composition asset A259780000726262. The notification identified the "RedAlert" recording by ISRC USUYG1340987 and UPC 194690369681, asserted that it used "Dreamscape" without authorization, and requested removal of the disputed claim. Empire's copyright manager acknowledged the notification and referred it to Empire personnel for review.

113. The separate YouTube "RedAlert" sound-recording assets identified in Plaintiff's correspondence were A544306216829974 and A259780000726262, respectively.

114. On July 15, 2025, after Plaintiff had already notified Empire of its infringement, Plaintiff yet again asked an Empire representative to remove the ownership claim on the sound-recording asset and Empire's claimed US-territories publishing share on the composition asset.

115. Separately, BMI and Mechanical Licensing Collective records identify Elmo O'Connor and Duran ("Lyson") as writers of "RedAlert" and identify Empire-related publishing interests in that work. After Monolith notified Empire on June 26, 2025, and again on July 15, 2025, that it disputed Empire's claim on the "RedAlert" YouTube composition asset because "RedAlert" incorporated "Dreamscape" without authorization, Empire continued to assert a claim on that asset.

116. The ownership conflict concerning that composition asset remained unresolved and continued to be the subject of correspondence in December 2025 and January 2026. On January 5, 2026, an Empire copyright manager stated that Empire was the publishing administrator for BONES and Duran, supplied their letters of direction, and requested support for Monolith's claim; later that day, he acknowledged an earlier inquiry describing the alleged infringement.

117. After months of disingenuous delays, on January 12, 2026, Defendant Empire's copyright manager represented that he had removed Empire's claim on the asset and that doing so "should resolve the overclaim in the US."

118. It should be noted that Youtube pays out on the 22 of each month for subscription fees, ad revenue, and royalties on UGC videos.

119. On July 3, 2025, a third-party uploader, IdleGlance, told Monolith that it had received the "greenlight" from BONES' label to upload "RedAlert" and had not known of the disputed "Dreamscape" sample. Plaintiff presently has the uploader's account of that communication, not the underlying authorization or its complete terms.

120. Plaintiff pleads these specific displays, asset identifiers, requests, and dates because they identify conduct relevant to claims under 17 U.S.C. § 1202(a) or 17 U.S.C. § 1202(b).

121. BONES publicly performed "RedAlert" at a significant number of multiple live events while using a version of the recording containing the "Dreamscape" material. Literally, and uncontroverted, the actual and original sound recording of Plaintiff's work.

122. Defendants are well aware that Plaintiff can and will identify the documented public performances and venues, dates, recordings, setlists, and related revenue records through discovery and admissible audiovisual and business records.

123. The live performances reproduced, played, or publicly performed the copyrighted sound recording and musical composition incorporated into "RedAlert."

124. All Defendants are on notice or should know that Plaintiff has preserved from the readily available public domain, industry and user-generated evidence documenting repeated live performances of "RedAlert," including during the GREYDAY 2025 tour. Plaintiff's BMI Live account lists BONES performances during August–October 2025 and includes a reported performance at Riverbend Music Center, Cincinnati, Ohio, on September 17, 2025.

125. All Defendants are on notice or should know that Plaintiff has preserved from the readily available public domain, multiple fan-recorded videos from GREYDAY 2025, including

representative clips from attendees titled "2025-09-17 Riverbend Music Center, Cincinnati, OH" that clearly captures BONES performing "RedAlert" live on September 17, 2025 with the "Dreamscape" soundbed audibly present. Full video files of all the tour appearances are preserved for production, authentication and for presentation to the Court if requested.

126. Publicly available setlist/performance listings and tour statistics (e.g., Setlist.fm) corroborate the repeated performances of "RedAlert" during the GREYDAY 2025 tour (from August 5, 2025, through October 11, 2025).

127. Beginning in May 2025, Plaintiff sent written infringement notices to Defendant Empire and representatives of the other Defendants through channels used for legal, copyright, and rights-management matters.

128. The notices identified:

a) the accused work as "RedAlert" by BONES;
b) ISRC USUYG1340987;
c) UPC 194690369681;
d) the copyrighted work as "Dreamscape" by Nox Arcana;
e) Copyright Registration No. SR 734-045;
f) links or other means to review the copyrighted and accused recordings; and
g) Plaintiff's assertion that no permission had been granted for the sampling or reproduction.

129. Defendant Empire received actual notice of Plaintiff's claim no later than May 22, 2025.

130. Plaintiff provided additional written notices identifying particular distribution, Content ID, composition, publishing, metadata, and rights-management assets associated with "RedAlert."

131. The notices were specific to permit Defendant Empire to identify the accused recording, locate the associated accounts and assets, investigate the alleged copying, and remove or modify the relevant claims and metadata.

132. After receiving notice, Defendant Empire continued to maintain, administer, or control the identified assets associated with "RedAlert."

133. In particular, the composition claims associated with the recording of "RedAlert" remains claimed by Empire to this day and continues to identifiy the Defendants as the sole creators of the work.

134. Platform records also show that the relevant assets were removed or modified in stages rather than all being disabled immediately after notice.

135. Plaintiff alleges the continued maintenance, administration, or control of the identified assets based on platform histories, asset records, screenshots, account records, and other independent business or platform evidence.

136. Defendant Empire had a duty to notify all other Defendants of Plaintiff's May 2025 Claims.

137. Defendant Empire is a sophisticated music-distribution and publishing enterprise that performs or coordinates catalog ingestion, digital delivery, metadata administration, publishing registration, rights management, Content ID administration, and royalty collection.

138. Defendant Empire had the practical ability to review, disable, modify, or remove the distribution and rights-management assets associated with "RedAlert."

139. Defendant Empire also had the practical ability to correct or remove composition and publisher claims associated with "RedAlert."

140. After receiving Plaintiff's specific notices, Defendant Empire knew that Plaintiff unambiguously holds ownership of the "Dreamscape" sound recording and composition and that "RedAlert" incorporated those works without authorization.

141. Despite that knowledge, Defendant Empire continued to maintain, administer, or control identified distribution, publishing, metadata, Content ID, or composition assets associated with "RedAlert."

142. Defendant Empire's post-notice conduct was not limited to passive storage or automatic routing. It included affirmative acts involving the acceptance, administration, maintenance, modification, monetization, or removal of identified assets.

143. Defendant Empire's conduct enabled "RedAlert" to remain available, searchable, monetized, claimed, administered, or otherwise exploited through digital platforms after Defendant Empire had received specific notice of Plaintiff's rights and allegations.

144. Defendant Empire's involvement was materially connected to the allegedly infringing uses because Defendant Empire's systems and accounts were used to distribute, identify, claim, administer, or monetize the specific recording and composition at issue.

145. Empire Defendants had a direct financial interest in the exploitation of "RedAlert" because its distribution, publishing, rights-management, or collection functions were tied to revenue generated by the identified recording, composition, claims, or platform uses.

146. The complete amounts received, retained, credited, collected, or otherwise controlled by Empire Defendants are within Empire Defendants' possession or control and will be established through further discovery, platform records, royalty records, contracts, and business records.

147. It is impossible to view Defendants collective behavior in isolation. Empire Defendants and BONES have been accused in federal litigation of substantially similar conduct involving the unauthorized use, exploitation, distribution, or administration of musical works. [1]

148. See also where Empire Defendants and BONES are named defendants in Goldman v. O'Connor p/k/a "BONES," et al., No. 1:26-cv-04180-GHW (S.D.N.Y. filed May 29, 2026). [2]

149. Plaintiff did not merely discover an infringement after the fact. Plaintiff notified Defendants of Plaintiff's rights, identified the unauthorized use of Plaintiff's Original Work, demanded that the infringement cease, and provided Defendants with an opportunity to investigate and correct the matter.

150. Yet the challenged and unambiguous exploitation continued.

151. Empire and or its Agents has rationalized to Plaintiff that their infringing activity is simply "hip-hop culture" indicating its willful intent and cannot fairly characterize itself as an entity that simply happened to distribute or administer an infringing work without any reason to question whether the necessary rights had been obtained.

---

[1] See Entity Production, Inc. v. Paper Route Empire, LLC, et al., No. 1:21-cv-00490-PAB (N.D. Ohio filed Mar. 2, 2021). In that action, Empire Distribution, Records and Publishing Inc. was named as a defendant and pleaded in the complaint as also doing business as "Empire Strikes First Publishing." The plaintiff asserted substantially similar claims arising from alleged unauthorized exploitation of copyrighted musical works. The action ultimately settled without a judicial determination on the merits.

[2] Goldman alleges that Defendants Bones, TeamSESH, and Empire Distribution, Inc. engaged in direct, contributory, and vicarious copyright infringement arising from the alleged unauthorized reproduction, distribution, monetization, and continuing commercial exploitation of a sound recording.

152. The circumstances support the claim that Empire Defendants and BONES, if not all Defendants, have developed a pattern of willful intent to exploit, distribute, administer, or monetize musical works without first ensuring that the rights necessary to do so have actually been properly obtained.

153. The Empire Defendants and BONES, if not all Defendants, have developed a pattern of arrogance and willful disrespect of other artists' original works.

154. The Empire Defendants actively chose to participate in the commercial exploitation of Plaintiff's Original Work even after having been placed on notice of Plaintiff's rights and the unauthorized nature of the use.

155. Defendants are accountable not only for the infringement itself, but for the deliberate decisions they made concerning the acquisition, administration, distribution, monetization, continued exploitation of the challenged work and misrepresentation of its ownership of the work to PRO's as well as the United States Copyright Office. The repeated nature of these circumstances makes clear why discovery and judicial scrutiny are necessary.

156. Defendants' acts caused Plaintiff's injury, including unauthorized exploitation of Plaintiff's Original Work, loss of licensing opportunities, loss of royalty and licensing revenue, diversion of audience and market value, and impairment of Plaintiff's ability to control the manner in which their works were used.

157. Defendants' acts have generated substantial revenue, profits, royalties, fees, commissions, or other financial benefits attributable in whole or in part to the unauthorized uses.

158. Plaintiff seeks an accounting sufficient to identify all receipts, profits, royalties, fees, commissions, claims, and other benefits attributable to the infringing uses.

159. Plaintiff seeks actual damages and any and all infringer's profits attributable to the infringement, or statutory damages where properly available, under the Copyright Act.

160. Plaintiff further seeks injunctive relief requiring Defendants to cease infringing activity and to remove, disable, correct, or relinquish identified distribution, publishing, Content ID, ownership, metadata, and rights-management claims associated with "RedAlert."

161. Plaintiff also seeks an order requiring correction of inaccurate authorship, composer, publisher, ownership, and rights-management information associated with "RedAlert," to the extent such correction is necessary to prevent continued exploitation or misattribution of Plaintiff's Original Work.

## COUNT I
### DIRECT COPYRIGHT INFRINGEMENT—SOUND RECORDING

162. Plaintiff incorporates Paragraphs 1 through 161 as if fully written herein.

163. Plaintiff owns valid and registered copyrights in the original sound recording titled "Dreamscape."

164. "RedAlert" unambiguously reproduces and incorporates an actual portion of the "Dreamscape" sound recording.

165. Defendants BONES, Elliot O'Connor, Duran, TeamSESH, Empire Distribution, Empire Publishing and The Merch Truck have all directly or through agents acting at their direction, reproduced, fixed, distributed, transmitted, released, sold, streamed, or otherwise exploited "RedAlert."

166. Defendant Empire Distribution engaged in affirmative, willful, volitional conduct by accepting, processing, delivering, or maintaining "RedAlert" for distribution through digital music services and related platform systems.

167. To the extent Defendant Empire Publishing itself submitted, maintained, administered, monetized, or licensed any recording-related claim or asset associated with "RedAlert," Empire Publishing also engaged in direct affirmative conduct contributing to the reproduction, distribution, transmission, or exploitation of the infringing recording.

168. None of these acts were authorized by Plaintiff.

169. Defendants thereby violated Plaintiff's exclusive rights in the "Dreamscape" sound recording under the Copyright Act, including the rights to reproduce and distribute copyrighted copies.

## COUNT II

### DIRECT COPYRIGHT INFRINGEMENT—MUSICAL COMPOSITION

170. Plaintiff incorporates Paragraphs 1 through 169 as if fully written herein.

171. Plaintiff owns valid and registered copyrights in the original musical composition "Dreamscape."

172. "RedAlert" reproduces and incorporates protectable elements of the "Dreamscape" composition and constitutes an unauthorized derivative work.

173. The similarities between the works arise from protectable expression, not merely from an idea, genre, commonplace musical device, or unprotectable musical fact.

174. Defendants BONES, Duran, TeamSESH, and the Empire Entities directly or through agents acting at their direction reproduced, distributed, publicly performed, digitally

transmitted, registered, administered, monetized, or otherwise exploited "RedAlert" as a work incorporating Plaintiff's composition.

175. Empire Publishing engaged in affirmative conduct concerning the composition by submitting, maintaining, administering, asserting, or monetizing composition-related registrations and claims associated with "RedAlert."

176. To the extent Empire Publishing contends that it acted only as an administrator, Plaintiff pleads in the alternative that Empire Publishing knowingly materially contributed to and exercised control over the composition-related exploitation described above.

177. None of these acts were authorized by Plaintiff.

178. Defendants thereby violated Plaintiff's exclusive rights in the "Dreamscape" composition under the Copyright Act.

## COUNT III
### CONTRIBUTORY COPYRIGHT INFRINGEMENT

179. Plaintiff incorporates Paragraphs 1 through 178 as if fully written herein.

180. Defendants BONES, Duran, and TeamSESH directly infringed Plaintiff's copyrights by creating, releasing, distributing, performing, or otherwise exploiting "RedAlert."

181. Defendant Empire Distribution and Empire Publishing knew of the alleged infringement no later than May 22, 2025, when they received specific written notice identifying the accused work, copyrighted work, registration, identifiers, and comparison materials.

182. After receiving notice, Defendant Empire Distribution and Defendant Empire Publishing continued to maintain, administer, control, distribute, claim, monetize, or otherwise support identified assets associated with "RedAlert."

183. Defendant Empire Distribution materially contributed to the infringement by supplying and maintaining distribution services through which the identified recording was delivered to and remained available on digital platforms.

184. Defendant Empire Publishing materially contributed to the infringement by administering, maintaining, asserting, or monetizing composition-related registrations, publisher records, and rights-management claims associated with "RedAlert."

185. Defendant Empire's conduct was directly connected to the specific infringing uses at issue. This is not a case based solely on Defendant Empire's provision of generalized financial, technical, or commercial services.

186. Defendant Empire had the understanding and ability to stop or limit the identified distribution and rights-management activity by removing, disabling, modifying, or relinquishing the relevant assets and claims.

187. Defendant Empire failed to take all reasonable steps to prevent the continued exploitation of the identified works after receiving specific notice.

188. Defendant Empire is therefore liable for contributory copyright infringement.

## COUNT IV
### VICARIOUS COPYRIGHT INFRINGEMENT

189. Plaintiff incorporates Paragraphs 1 through 188.

190. Defendants BONES, Duran, and TeamSESH directly infringed Plaintiff's copyrights through the creation, release, distribution, performance, and exploitation of "RedAlert."

191. Empire Distribution and Defendant Empire Publishing had the legal right and duty notwithstanding the practical ability to supervise, control, limit, disable, or terminate the

specific distribution, publishing, Content ID, composition, metadata, and rights-management activity associated with "RedAlert."

192. The Empire Defendants control is demonstrated by its ability to create, maintain, modify, administer, monetize, and remove the identified assets and claims.

193. The Empire Defendants exercised control over the relevant distribution and rights-management activity even if it did not control every act of BONES, Duran, or TeamSESH.

194. The Empire Defendants received or had a direct financial interest in revenue, royalties, fees, commissions, or other benefits attributable to the distribution, publishing, administration, rights-management, or monetization of "RedAlert."

195. The Empire Defendants continued to exercise or retain that control after receiving specific notice of Plaintiff's rights and the alleged infringement.

196. The Empire Defendants conduct therefore satisfies the control and direct-financial-interest requirements for vicarious liability with respect to the infringing activity over which Empire exercised control.

197. The Empire Defendants Distribution and Empire Publishing are therefore liable for vicarious copyright infringement.

## PRAYER FOR RELIEF

**WHEREFORE, Plaintiffs request judgment against Defendants as follows:**

A. Declaring that "hip-hop" culture does not preempt Federal Copyright Law.

B. Declaring that Defendants infringed Plaintiff's copyrights in the "Dreamscape" sound recording and musical composition;

C. That Defendants be adjudged to have committed this copyright infringement willfully;

D. That Defendants be adjudged to be jointly and severally liable for this copyright infringement;

E. That, pursuant to 17 U.S.C. § 504(b), the Court award Monolith Graphics its damages and Defendants' profits in such amount as may be found as a result of Defendants' copyright infringement;

F. Alternatively, pursuant to 17 U.S.C. § 504(c), for maximum statutory damages with respect to the Copyrighted Recording infringed and for maximum statutory damages in the amount with respect to the Copyrighted Composition infringed, or for such other amounts as may be proper pursuant to 17 U.S.C. § 504(c);

G. Enjoining Defendants and those acting in concert with them from reproducing, distributing, publicly performing, digitally transmitting, monetizing, administering, claiming, or otherwise exploiting "RedAlert" in a form that incorporates Plaintiff's Original Work;

H. Requiring Defendants to remove, disable, correct, or relinquish the identified distribution, Content ID, composition, publisher, ownership, metadata, and rights-management claims and assets associated with "RedAlert";

I. Requiring correction of inaccurate authorship, composer, publisher, ownership, and rights-management information associated with "RedAlert";

J. Awarding Plaintiff actual damages and any profits attributable to the infringement, or statutory damages where available;

K. Awarding Plaintiff prejudgment and post-judgment interest as permitted by law;

L. Awarding Plaintiff reasonable attorneys' fees and costs where authorized;

M. Ordering a complete accounting of revenues, profits, royalties, fees, commissions, claims, and other benefits attributable to the infringing conduct; and

N. Granting such other relief as the Court deems just and proper.

Respectfully Submitted,

David T. Rice (0104914)
Attorney and Counselor at Law
326 N. Court Street
Medina, OH 44256
T 330.461.3150
attorneydavidrice@outlook.com
*Trial Attorney for Plaintiff*

/s/ Jeffrey R. Chilcoat
/s/ Patrick D. McCarthy

Jeffrey R. Chilcoat (0069074)
Patrick D. McCarthy (0092947)
Chilcoat Law LLC
586 Blenheim Rd
Columbus, Ohio 43214
T 614.943.3201
attorneypmccarthy@gmail.com
*Co-Counsel, Attorney for Plaintiff*

JURY DEMAND
Plaintiff Monolith Graphics demands a jury trial pursuant to Fed. R. Civ. P. 38 as to all issues so triable in this action.

David T. Rice (0104914)
Attorney for Plaintiff Joseph Vargo d/b/a/ Monolith Graphics

VERIFICATION
I hereby verify that, to the best of my information and knowledge, the allegations set forth herein are true and correct.

Joseph Vargo